**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

SEP 25 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re:  DEBORAH MYNETTE MCINTOSH,<br><br>Debtor,<br><br>------------------------------<br><br>DAVID N. CHANDLER, P.C.,<br><br>Appellant,<br><br>  v.<br><br>DEBORAH MYNETTE MCINTOSH; CALHFA MORTGAGE ASSISTANCE PROGRAM,<br><br>Appellees. | No.    15-60076<br><br>BAP No. 15-1029<br><br>MEMORANDUM[*] |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Dunn, Jury, and Taylor, Bankruptcy Judges, Presiding

Argued and Submitted July 11, 2017
San Francisco, California

Before:  BEA and N.R. SMITH, Circuit Judges, and LYNN,[**] Chief District Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Barbara M. G. Lynn, Chief United States District Judge for the Northern District of Texas, sitting by designation.

David N. Chandler, P.C. ("Chandler") appeals from the Bankruptcy Appellate Panel's ("BAP") judgment which affirmed the bankruptcy court's orders that dismissed Debtor Deborah Mynette McIntosh's Chapter 13 bankruptcy case, denied Chandler's motion for an order directing the distribution of sales proceeds of Debtor's residence to the Chapter 13 Trustee, denied Chandler's fee application, and ordered disgorgement of fees Chandler had already received from Debtor McIntosh. We have jurisdiction under 28 U.S.C. § 158(d). We review de novo BAP decisions and apply the same standard of review that the BAP applied to the bankruptcy court's ruling. *Boyajian v. New Falls Corp.* (*In re Boyajian*), 564 F.3d 1088, 1090 (9th Cir. 2009). We affirm.

The orders on appeal arise from a disagreement between Debtor and her former bankruptcy attorney, David N. Chandler, Jr., over his fees. Debtor owed $450,000 in attorneys' fees to a law firm, Carr, McClellan, Ingersoll, Thompson & Horn ("CMITH"), for contesting a will on her behalf. Of that amount, $230,000 was secured by a third priority deed of trust on Debtor's residence. CMITH sued Debtor in the California Superior Court, and sought to foreclose on its security interest and to obtain a money judgment for the outstanding fees and costs. After she was served with CMITH's complaint, Debtor retained Chandler to file a Chapter 13 bankruptcy case, in part to enforce Debtor's homestead exemption in her residence. Chandler initiated an adversary proceeding against CMITH in the

2

bankruptcy court, in which he argued that the deed of trust for the benefit of CMITH was invalid under California Rule of Professional Conduct 3-300 because CMITH had not advised McIntosh that she may seek advice from separate counsel before entering into such a transaction with CMITH.[1] Chandler was successful; CMITH voluntarily re-conveyed the deed of trust to McIntosh and formally released its deed of trust as a lien against Debtor's property. Free of the deed of trust, Debtor's house was then sold; the proceeds were used to pay off some creditors, and the remaining $57,712 balance was held in escrow under the jurisdiction of the bankruptcy court. Debtor's First Amended Plan of confirmation was subsequently approved by the bankruptcy court. The First Amended Plan explicitly provided that any claims for taxes due and amount owed to CalHFA Mortgage Assistance Corp. would be paid from the escrow, and that because of the applicability of the homestead exemption, the Debtor would receive any remaining proceeds.

While the $57,712 remained in the escrow, a disagreement arose between Debtor and Chandler. Debtor obtained new counsel, who moved to dismiss the bankruptcy proceeding and to have the escrowed funds released to CalHFA and

---

[1] In relevant part, this rule reads: "A member shall not enter into a business transaction with a client…unless…[t]he client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice."

Debtor pursuant to the approved First Amended Plan. Chandler filed an application for attorneys' fees, moved to distribute the remaining proceeds of the house sale to the Chapter 13 Trustee, and argued that the deed of trust to CMITH was not void under said Rule 3-300 – as he had previously argued – but instead was invalid under § 544(b)(1)[2] of the Bankruptcy Code (such that it instead had been preserved automatically for the benefit of the estate under 11 U.S.C. § 551)[3] and that the remaining proceeds of the sale should be distributed to the Trustee rather than to the Debtor and CalHFA as per the Debtor's approved First Amended Plan. Once in the hands of the Trustee, the funds would be subject to the claims of unsecured creditors, including Chandler.

The bankruptcy court held a hearing on the motions, and found that Chandler had indeed violated his duty of loyalty to Debtor by taking a position adverse to his former client on an issue on which he had previously represented the client—namely, whether the CMITH lien was preserved for the benefit of the estate, or whether the funds subject to the lien could be distributed to Debtor

---

[2] § 544(b)(1) reads: "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."

[3] § 551 reads: "Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate."

pursuant to her homestead exemption. Accordingly, the bankruptcy court (1) granted Debtor's motion to dismiss her bankruptcy case, which resulted in $21,000 of the escrowed sale proceeds being distributed to CalFHA and the remainder distributed to Debtor on account of her homestead exemption; (2) denied Chandler's motion for an order directing the escrow company to pay the net sales proceeds to the Chapter 13 Trustee; and (3) denied Chandler's fee application and required him to disgorge what he had previously been paid by Debtor McIntosh.

The bankruptcy court's findings of fact are reviewed for clear error. *Cont'l Ins. Co. v. Thorpe Insulation Co.* (*In re Thorpe Insulation Co.*), 671 F.3d 1011, 1019 (9th Cir. 2011); *In re Leavitt*, 171 F.3d 1219, 1222 (9th Cir. 1999).

The bankruptcy court did not clearly err in finding that Chandler had breached his duty of loyalty to Debtor. State rules of professional responsibility apply to the dispute between Debtor and Chandler, as long as those rules do not conflict with the Bankruptcy Code or the Bankruptcy Rules. *In re Song*, 2008 WL 6058782, at *11 & n.27 (B.A.P. 9th Cir. Feb. 12, 2008). Under California law, the duty of loyalty survives the end of the attorney–client relationship; "after severing his relationship with a former client" an attorney "may not do anything which will injuriously affect his former client in any manner in which he formerly represented him." *People ex rel. Deukmejian v. Brown*, 624 P.2d 1206, 1208 (Cal. 1981); *see also Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (same).

5

Whether Chandler breached his a duty of loyalty is a question of fact, and thus, the bankruptcy court's finding of breach is reviewed for clear error.

In identifying Chandler's misconduct, the bankruptcy court pointed to Chandler's statements in December 2013 that the CMITH lien was not preserved for the estate and that the equity created by removing that lien would go towards Debtor's homestead exemption. It also pointed to Chandler's post-termination argument that, in October of 2014, the CMITH lien was preserved under § 551 as an avoided transfer that should be distributed to the Trustee, which would result in the liened assets becoming available to pay unsecured creditors like Chandler, rather than going to debtor McIntosh as homestead exemption funds. The bankruptcy court noted that the complaint brought against CMITH in the adversary proceeding sought relief solely on the basis of California Rule of Professional Responsibility 3-300, not under any provision of the Bankruptcy Code. Based on the facts before the bankruptcy court, it was not clearly erroneous for that court to conclude that Chandler changed his argument concerning the applicability of § 551 to the CMITH lien, a change that had an injurious effect on Debtor, and served as a basis to conclude that Chandler breached his duty of loyalty to Debtor. That injury includes the expense and effort expended by Debtor in responding to Chandler's change in position, which was adverse to Debtor, and the delay in Debtor's receipt of the funds held in escrow. Those injuries were the consequences of the breach of

6

loyalty.

The bankruptcy court did not abuse its discretion by dismissing the bankruptcy case and not awarding Chandler attorney's fees. *See Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012) (a district court's decision to grant or deny attorney's fees is reviewed for abuse of discretion); *In re Ellsworth*, 455 B.R. 904, 914 (B.A.P. 9th Cir. 2011) (the bankruptcy court's dismissal of a Chapter 13 bankruptcy case is reviewed for abuse of discretion). At oral argument, Chandler abandoned his claim challenging the bankruptcy court's disgorgement order.

**AFFIRMED**.